IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BARBARA ELLIS,                    )
                                  )
          Plaintiff,              )
                                  )
     v.                           )     CASE NO. 2:11-CV-1064-WKW
                                  )              [WO]
JACKSON NATIONAL LIFE             )
INSURANCE CO., *et al.*,          )
                                  )
          Defendants.             )

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

This diversity action involves a dispute regarding the proper beneficiaries to a $1 million annuity policy issued by Jackson National Life Insurance Co. to the deceased, John C. Ellis Jr. ("Mr. Ellis").  Plaintiff Barbara Ellis, who used to be a beneficiary on her ex-husband's policy, brings this action alleging that her ex-husband's adult children instigated a change in the beneficiary designation through fraud and by reason of the insured's mental incompetence.  Plaintiff seeks to void the beneficiary designation that had the effect of excluding her from receiving any of the policy's proceeds.

Before the court is a motion to dismiss for lack of personal jurisdiction, filed by Defendants Janet E. Gordon, Elizabeth E. Hanson, John C. Ellis III, and The

Russell W. Ellis Irrevocable Trust ("Beneficiary Defendants"), pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  (Doc. # 60.)  Alternatively, the Beneficiary Defendants move to transfer this action to the United States District Court for the Southern District of Mississippi, pursuant to 28 U.S.C. § 1404(a).  (Doc. # 60.) Plaintiff Barbara Ellis filed a response in opposition (Doc. # 66), to which the Beneficiary Defendants replied (Doc. # 70).   After careful consideration of the arguments of counsel, the applicable law and the record as a whole, the court finds that the motion to dismiss is due to be denied but that this action is due to be transferred to the United States District Court for the Southern District of Mississippi for the convenience of the parties and in the interest of justice.

## II.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, and there is complete diversity of citizenship between Plaintiff and Defendants.  Personal jurisdiction and venue are at issue.

## III. STANDARDS OF REVIEW

### A. Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)

A Rule 12(b)(2) motion tests the court's exercise of personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2). Where a Rule 12(b)(2) motion to dismiss is decided without an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction over a non-resident defendant. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). A plaintiff demonstrates a "prima facie case of personal jurisdiction" by submitting sufficient evidence to defeat a motion made pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006). Allegations in the complaint are presumed true, if uncontroverted by the defendant's evidence. *Madara*, 916 F.2d at 1514. When the parties' evidence is in conflict, the court must construe all reasonable inferences in favor of the plaintiff, particularly when the jurisdictional issues are intertwined with the merits. *Delong Equip. Co. v. Wash. Mills Abrasive*, 840 F.2d 843, 845 (11th Cir. 1988).

### B. Motion to Transfer Pursuant to § 1404(a)

A district court may transfer a civil action to any other district in which it might have been brought "[f]or the convenience of the parties and witnesses" and "in the

interest of justice." § 1404(a). Because federal courts usually accord deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). Ultimately, a district court has "broad discretion in weighing the conflicting arguments as to venue," *England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988), and must engage in an "individualized, case-by-case consideration of convenience and fairness," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation and internal quotation marks omitted).

## IV.  BACKGROUND

When Mr. Ellis died in his home state of Mississippi on October 21, 2011, he had a $1 million annuity policy issued by Jackson National Life Insurance Co. ("National Life"). Unbeknownst to Plaintiff, nine months prior to his death, Mr. Ellis changed the beneficiary designation on the policy, dividing the proceeds equally among his four adult children. This change had the effect of revoking all previous beneficiary designations, including Plaintiff's prior designation as a beneficiary of 66 percent of the policy's proceeds. (Am. Compl. ¶¶ 11, 12, 14, 15.)

On one side of this dispute is Plaintiff, an Alabama citizen, who is Mr. Ellis's ex-wife. She contends that Mr. Ellis lacked testamentary capacity to change the policy's beneficiaries.[1] Plaintiff points to the certificates of incapacity signed by Mr. Ellis's treating physicians some six weeks after Mr. Ellis changed the beneficiary designation and the ensuing Mississippi state court judgment appointing Mr. Ellis's two daughters as co-conservators to manage Mr. Ellis's estate. (Am. Compl. ¶¶ 16-19.) Her theory is that, during Mr. Ellis's period of incompetency, the Beneficiary Defendants fraudulently caused a change in the beneficiary designation so as to deprive her of her share of the policy's proceeds. In fact, Plaintiff alleges that less than two weeks after Mr. Ellis had confirmed to her that she was the main beneficiary on his policy, her status as a beneficiary was extinguished entirely and without her knowledge. (Am. Compl. ¶¶ 14, 24.) On the other side of this dispute are Mr. Ellis's three children and a trust established for the benefit of Mr. Ellis's

---

[1] This case does not present the stereotypic scenario where the insured divorces but fails to change the beneficiary designation to remove the ex-spouse. Here, Plaintiff and Mr. Ellis married and divorced twice, with the second marriage ending in October 2003. More than five years later in April 2009, Mr. Ellis named Plaintiff as a beneficiary to 66 percent of the policy proceeds, identifying her on the designation form as a "friend." In the same form, Mr. Ellis designated each of his daughters to receive 9 percent and each of his sons 8 percent of the policy's proceeds.

fourth child, all of whom are Mississippi citizens.  These Defendants are equal co-beneficiaries under the policy as a result of the change in the beneficiary designation.[2]

Approximately one month after Mr. Ellis's death, Plaintiff forwarded a letter and a copy of the form making her a beneficiary on Mr. Ellis's policy to National Life.[3]  (Am. Compl. ¶ 21.)  She soon learned from National Life, however, that she was no longer a beneficiary on the policy and that it would pay the proceeds of the policy to the Beneficiary Defendants unless it received a "court order to the contrary within ten days."  (Compl., Ex. 8; *see also* Am. Compl. ¶¶ 23–24.)  That revelation triggered this lawsuit, which Plaintiff originally filed only against National Life, along with a motion for a temporary restraining order to prevent National Life from disbursing the proceeds of the policy.  A temporary restraining order issued.  National Life responded that it had no interest in the funds, and, thus, it deposited the proceeds of the policy, in an amount totaling $1,056,195.93, into the registry of this court.[4]

---

[2] Mr. Ellis's fourth grown child, Russell W. Ellis, who is proceeding *pro se*, also is a defendant.  Neither Russell W. Ellis nor National Life is a party to the Beneficiary Defendants' motion to dismiss or, in the alternative, to transfer.  National Life has indicated, however, that it "takes no position" on the pending motion.  (Doc. # 69, at 1.)  Moreover, in a prior Order, the court found that Mr. Ellis waived the defense of lack of personal jurisdiction, *see* Fed. R. Civ. P. 12(b) and 12(h), and consented to the personal jurisdiction of this court by filing a counter-claim).)  (*See* Doc. # 51, at 1-2.)

[3] National Life is incorporated in Michigan and also has its principal place of business in Michigan.

[4] National Life has since filed a counterclaim and crossclaim for interpleader and declaratory relief naming the Beneficiary Defendants as cross-defendants.  (Doc. # 67.)

A two-count Amended Complaint followed, adding the Beneficiary Defendants and Defendant Russell W. Ellis.  Count I alleges that in January 2011, Mr. Ellis was "mentally incapable of managing his own affairs and lacked the mental and/or testamentary capacity to execute a change of beneficiary" designation on the policy. (Am. Compl. ¶ 30.)  Count II alleges that Plaintiff's removal as a beneficiary "was made in an improper, wrongful and/or fraudulent manner" and while Mr. Ellis was mentally incompetent.  (Am. Compl. ¶ 32.)  Plaintiff requests the court to void the beneficiary designation form that excluded her and to enforce the preceding beneficiary designation form that awarded her 66 percent of the policy's proceeds.

The Beneficiary Defendants responded to the Amended Complaint with a motion to dismiss for lack of personal jurisdiction on the ground that they have no meaningful contacts in the state of Alabama.  Moreover, the Beneficiary Defendants contend that not only must all claims against them be dismissed, but also that the action in its entirety must be dismissed because they are necessary and indispensable parties.  *See* Fed. R. Civ. P. 19(a).  Alternatively, the Beneficiary Defendants argue that this action should be transferred to the United States District Court for the Southern District of Mississippi, pursuant to § 1404(a).  Plaintiff opposes the motions in their entirety.

# V.  DISCUSSION

## A.  Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)

The first issue concerns this court's exercise of personal jurisdiction over the nonresident Beneficiary Defendants.[7]  In a diversity action, the inquiry into personal jurisdiction requires two steps.  First, the exercise of jurisdiction must be appropriate under the state's long-arm statute, and, second, it must not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274–75 (11th Cir. 2009).  Alabama's long-arm provision, Rule 4.2(a) of the Alabama Rules of Civil Procedure, governs an Alabama state court's exercise of personal jurisdiction over an out-of-state defendant.  *See Vista Land & Equip., LLC v. Computer Programs & Sys., Inc.*, 953 So. 2d 1170, 1174 (Ala. 2006).  Because Alabama's long-arm rule extends to the full limits of due process under the Fourteenth Amendment, *see id.*, the two-step, personal jurisdiction analysis merges.  The court need only consider, therefore, whether the exercise of jurisdiction satisfies the requirements of due process.  *Olivier v. Merritt Dredging Co.*, 979 F.2d 827, 830 (11th Cir. 1992).

---

[7] The jurisdictional issue is being considered based upon the pleadings and evidence.  In the exercise of its discretion, the court declines to hold an evidentiary hearing, and the parties have not requested one.  *See Madara*, 916 F.2d at 1514.

Due process requires (1) that the defendant have "certain minimum contacts" with the forum state and (2) if such minimum contacts exist, that the exercise of jurisdiction over the defendant "'does not offend traditional notions of fair play and substantial justice.'" *Burnham v. Superior Court of Calif.*, 495 U.S. 604, 618 (1990) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). "This two-part test embodies the controlling due process principle that a defendant must have 'fair warning' that a particular activity may subject it to the jurisdiction of a foreign sovereign." *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1545 (11th Cir. 1993).

The Beneficiary Defendants argue that they do not have the required minimum contacts with the state of Alabama to support this court's exercise of personal jurisdiction over them. Two types of minimum contacts can form the basis for personal jurisdiction: general and specific. *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 n.3 (11th Cir. 2006). General jurisdiction may arise from a party's contacts with the forum state that are unrelated to the litigation. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.8–9 (1984). To establish general personal jurisdiction, the defendant's activities in the state must have been "continuous and systematic." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1274 (11th Cir. 2002). In contrast, "[s]pecific

9

jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–75 (1985).

### 1.    *General Personal Jurisdiction*

As to general personal jurisdiction, the Beneficiary Defendants submit affidavits establishing the absence of constitutionally significant contacts with the state of Alabama.  All are Mississippi citizens.  The three individual Beneficiary Defendants, specifically Mr. Ellis's two daughters and one of his sons, attest that they do not live in Alabama, do not own property in the state of Alabama, do not work in or solicit any business from this state, and do not maintain any bank accounts here. Concerning the fourth Beneficiary Defendant, there is affidavit testimony that neither the trust, which was established for the benefit of one of Mr. Ellis's sons, nor the trust's trustee has any connections with this state.  The Beneficiary Defendants also attest that Mr. Ellis changed the beneficiary designations while in Mississippi and that all subsequent proceedings and medical examinations surrounding Mr. Ellis's competency transpired in Mississippi.

Plaintiff has not submitted any contradictory evidence.  Instead, Plaintiff focuses on the deceased policyholder's past travels to Alabama.  Emphasizing that

10

prior to his death Mr. Ellis spent substantial time with her at her home in Orange Beach, Alabama, Plaintiff argues that his contacts with her in Alabama should count for something in the personal jurisdiction analysis.  Plaintiff's focus is misplaced. Mr. Ellis's contacts with the forum state, as well as Plaintiff's contacts with the deceased, are not germane to whether any of the Beneficiary Defendants can be subjected to the personal jurisdiction of this court.  Only the defendant's contacts with the forum count, and "[e]ach defendant's contacts with the forum State must be assessed individually."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *see also Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000) ("[I]t is important to remember that the conduct at issue is that of the defendants.  No plaintiff can establish jurisdiction over a defendant through his own actions.").

Based on the undisputed affidavits submitted by the Beneficiary Defendants, the court finds that they do not have continuous and systematic contacts with the state of Alabama sufficient to satisfy the minimum contacts standard for exercising general personal jurisdiction.  The issue is, therefore, one of specific personal jurisdiction.

### 2.   *Specific Personal Jurisdiction*

Even where there is no general personal jurisdiction over a nonresident defendant, Alabama courts still may exercise personal jurisdiction if the case arises

out of certain forum-related acts.  Plaintiff has not contradicted the Beneficiary Defendants' evidence that the change in the beneficiary designation form was executed in Mississippi and that the Beneficiary Defendants "undertook no actions involving the policy in the state of Alabama." (*See, e.g.*, Janet Gordon's Aff. ¶¶ 17, 22.)  There also are no allegations or evidence that the Beneficiary Defendants committed any tortious acts in Alabama.  Notwithstanding these facts, Plaintiff argues that there are sufficient minimum contacts to justify this court's exercise of specific personal jurisdiction over the Beneficiary Defendants pursuant to the "effects" test set out in *Calder v. Jones*, 465 U.S. 783 (1984), because the alleged out-of-state intentional conduct caused injury to an Alabama citizen.  The Beneficiary Defendants respond that Plaintiff's interpretation of the effects test is "overly simplistic" and that Plaintiff's sparse allegations and evidence do not demonstrate that "each of the Beneficiary Defendants have sufficient minimum contacts with the state of Alabama to permit each . . . to be haled into court without offending the traditional notions of fair play and substantial justice." (Doc. # 70, at 7.)

*Calder* establishes that there are certain circumstances where specific personal jurisdiction may be based on the in-forum effects of a defendant's extra-forum conduct.  In *Calder*, a libel action was brought in a California court against two Florida defendants, a writer, and the editor of the *National Enquirer* magazine. *See*

12

465 U.S. at 784–85.  The alleged libelous article was written and edited in Florida and published in the Florida-based national tabloid magazine.  *See id.* at 784–86.  Holding that personal jurisdiction over the Florida defendants was proper in California, the Court explained that the "focal point" of the article "concerned the California activities of a California resident," *id.* at 788–89, that the magazine's largest circulation was in California, *id.* at 790, and that the "brunt of the harm, in terms both of [the plaintiff's] emotional distress and the injury to her professional reputation," was endured by the plaintiff in California, *id.* at 789.  Jurisdiction was proper in California based on the "effects" of the defendants' Florida conduct in California. *Id.* at 790 (citation and internal quotation marks omitted).

The Eleventh Circuit applies the *Calder* effects test in cases involving intentional torts.[8]  *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009); *see also Licciardello*, 544 F.3d at 1286 n.6 ("Under the effects test, acts expressly aimed by the defendant at an individual in the forum may result in personal jurisdiction over the defendant, but mere untargeted action or a fortuitous result will not." (citing *Calder*, 465 U.S. at 788–90)).  The Eleventh Circuit has noted that

---

[8]  In cases involving negligence, the test is different:  Minimum contacts are constitutionally sufficient for specific personal jurisdiction when (1) there "exist[s] some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws[,]" and (2) "the defendant's contacts with the forum . . . relate to the plaintiff's cause of action or have given rise to it." *Oldfield*, 558 F.3d at 1220.

"[s]tated in its broadest construction, the effects test requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Oldfield*, 558 F.3d at 1220 n.28.  Although admittedly a close issue, the court finds that the *Calder* effects test is met.

### a.  *Intentional Tort*

The parties have not pointed to any decision from the Eleventh Circuit applying the *Calder* effects test in a factually similar context as the one presented here, and none has been found.  The Eleventh Circuit has recognized that "[m]any courts have employed the *Calder* 'effects' test when the plaintiff's claim involves an intentional tort" other than libel as was at issue in *Calder*.  *Licciardello*, 544 F.3d at 1286 (collecting cases).  In *Licciardello*, the Eleventh Circuit countenanced the use of the effects test to determine personal jurisdiction over a nonresident defendant alleged to have committed trademark infringement.  *Id.* at 1287–88.  The alleged "intentional tort" was the defendant's posting on a website of the plaintiff's trademarked name and photograph in a manner to imply the plaintiff's endorsement. The posting was "not negligent, but intentional."  *Id.* at 1288–89; *see id.* at 1288 n.8 ("[W]here the internet is used as a vehicle for the deliberate, intentional misappropriation . . . ," the

14

actor can be haled to the forum.)[9]; *see also Brennan v. Roman Catholic Diocese of Syracuse New York, Inc.*, 322 F. App'x 852, 855 (11th Cir. 2009) (applying the *Calder* effects test where the claims were for intentional fraudulent misrepresentation and intentional infliction of emotional distress).

Here, the offending act is the Beneficiary Defendants' act of causing a change in the beneficiary designation on Mr. Ellis's policy that divided equally the policy's proceeds among Mr. Ellis's four children and removed Plaintiff as a beneficiary. Plaintiff's allegations admittedly are sparse, but the court finds them to be sufficient to demonstrate an act that was intentional.  Additionally, the Amended Complaint alleges that this act was "fraudulent" or otherwise "wrongful," not merely negligent.[10] (Am. Compl. ¶ 32.)  These allegations show the Beneficiary Defendants' alleged commission of an intentional tort.

The Beneficiary Defendants argue, however, that Plaintiff has not submitted any evidence (as opposed to allegations) that the actions of the Beneficiary

---

[9] The *Licciardello* court noted that "[m]ere negligent use of an infringing mark would not satisfy the *Calder* test."  544 F.3d at 1287 n.6.

[10] The Seventh and Tenth Circuits have noted a split among the circuits as to whether under the first *Calder* prong, the act must be only intentional or must be both intentional and allegedly tortious.  *See Felland v. Clifton*, 682 F.3d 665, 674–75 & n.2 (7th Cir. 2012); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072–73 (10th Cir. 2008).  The Eleventh Circuit was not cited in these discussions.  This court need not opine on the fray because the allegations here are sufficient to demonstrate both an intentional and allegedly tortious act.

Defendants were intentional and that Plaintiff cannot rely on the allegations in the Amended Complaint to meet her burden of demonstrating personal jurisdiction. (Doc. # 70, at 8–9.)  The court disagrees.

If a plaintiff's allegations in the complaint are not contradicted, they are presumed true and factor into the personal jurisdiction analysis.  *See Madara*, 916 F.2d at 1514.  The Beneficiary Defendants have not pointed to any attestations in their affidavits that refute Plaintiff's allegations, and the court has found none.  At best, on this issue, the Beneficiary Defendants have attested that it was Mr. Ellis who "changed the beneficiary designation for the Policy" (*see, e.g.*, Hanson's Aff. ¶ 22), but that attestation does not rule out that he was persuaded to do so because of the Beneficiary Defendants' alleged fraudulent acts.  (*See* Pl.'s Aff. 1 (suggesting that Mr. Ellis's signature on the change of beneficiary form may have been fraudulent because it was forged).)

Moreover, because the issue of whether Defendants acted intentionally is essentially a merits inquiry, even assuming the existence of a conflict between Plaintiff's and the Beneficiary Defendants' evidence, "greater weight" would be given to Plaintiff's version of events.  *Delong Equip. Co.*, 840 F.2d at 845; *cf. Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250 (11th Cir. 2000) (holding that a full-scale inquiry into whether the defendant committed a tort is not

required to satisfy personal jurisdiction under Florida's long-arm statute; it is
sufficient that the record is in dispute as to the merits of the claim).  In sum, the court
finds that the first *Calder* prong is satisfied.

> **b.    *Express Aiming***

Plaintiff also must establish that the Beneficiary Defendants expressly aimed
their intentional and allegedly tortious act at Alabama.  As alleged, it is clear that
Plaintiff suffered the financial effects of the Beneficiary Defendants' alleged
intentional and fraudulent conduct:  But for the change in the beneficiary designation
form, Plaintiff would have collected $660,000 as a beneficiary on Mr. Ellis's policy.
For purposes of satisfying *Calder*'s prerequisites, however, there must be "something
more" than the fact that a plaintiff feels the intentional conduct's effect in the forum
state.  *Licciardello*, 544 F.3d at 1287 (quoting *Bancroft & Masters, Inc. v. Augusta
Nat'l, Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000), *overruled on other grounds by
Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199,
1206–07 (9th Cir. 2006))).  Otherwise, "jurisdiction in intentional tort cases would
always be appropriate in the plaintiff's home state, since the plaintiff always 'feels'
the impact of the tort there."  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 263 (3d
Cir. 1998).  In *Licciardello*, the Eleventh Circuit agreed with the Ninth Circuit that
"*Calder* requires that the defendant 'expressly aim' his wrongful conduct,

individually targeting a known forum resident." *Licciardello*, 544 F.3d at 1287 (quoting *Bancroft & Masters*, 223 F.3d at 1088, *overruled on other grounds by Yahoo! Inc.*, 433 F.3d at 1206–07). The express aiming requirement has been incorporated by the Eleventh Circuit as the second *Calder* prong. *See Oldfield*, 558 F.3d at 1220 n.28. What exactly is required under this prong is not always easy to decipher, but in *Bancroft & Masters*, the Ninth Circuit provided some guidance:

> Express aiming is a concept that in the jurisdictional context hardly defines itself. From the available cases, we deduce that the requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.

223 F.3d at 1087; *see also Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex*, 623 F.3d 440, 445 (7th Cir. 2010) ("'[E]xpress aiming' remains the crucial requirement when a plaintiff seeks to establish personal jurisdiction under *Calder*.").

Another Ninth Circuit decision, *Metropolitan Life Insurance Co. v. Neaves*, 912 F.2d 1062 (9th Cir. 1990), also is instructive based on its factual similarities with this case. In *Metropolitan Life*, an insurance company brought a declaratory judgment action in a California district court to determine whether it correctly paid all of the proceeds on a life insurance policy to an Alabama citizen, who was one of the two designated beneficiaries. The theory was that the Alabama beneficiary

18

fraudulently represented to the insurance company that the second beneficiary was deceased for the purpose of collecting all of the proceeds of the policy and depriving the second beneficiary of his share of the proceeds.  Relying on *Calder*, the Ninth Circuit held that the Alabama beneficiary could be haled into a California court.  By sending the fraudulent forms to the insurance company, the Alabama beneficiary "was purposefully defrauding" the California beneficiary.[11]  *Id.* at 1065.

The Beneficiary Defendants argue that Plaintiff has not shown that their alleged fraudulent conduct was expressly aimed at Plaintiff because there is no evidence that the Beneficiary Defendants knew that Plaintiff was an Alabama resident or that their acts would cause her harm in Alabama.  (Doc. # 70, at 8.)  This argument is not persuasive.  While it remains Plaintiff's burden to prove personal jurisdiction, it is notable that the Beneficiary Defendants have not disavowed knowledge of where Plaintiff lived.  It seems illogical that Plaintiff's grown stepchildren would not know the state in which their ex-stepmother lived, particularly given Plaintiff's evidence of their father's relationship and contacts with Plaintiff as recently as 2010, but the court need not base a finding of knowledge on bare logic.  There is something more in the evidence from which to infer knowledge: the judgment entered on March 28,

---

[11] Although *Metropolitan Life* was decided prior to the Ninth Circuit's explicit adoption of the "express aiming" requirement, the Ninth Circuit has relied on its reasoning as recently as 2011.  *See Fiore v. Walden*, 657 F.3d 838, 852 (9th Cir. 2011).

2011, in the Chancery Court of Harrison County, Mississippi, appointing Janet Gordon and Elizabeth Hanson (two of the Beneficiary Defendants) as co-conservators to manage their father's estate.  Based upon that appointment, their knowledge of Mr. Ellis's assets reasonably can be assumed.  (*See* Order of the Chancery Court (ordering Ms. Gordon and Ms. Hanson to deliver to the clerk of the court an inventory of all Mr. Ellis's estate, real and personal (Pl. Ex. 7 to Am. Compl.).)  Mr. Ellis's policy no doubt is part of his conservatorship estate, and at the time of Ms. Gordon's and Ms. Hanson's appointment, the beneficiary designation form in effect named Plaintiff as a 66 percent beneficiary and listed an Alabama address for her.  (Ex. 1 to Compl. (Doc. # 1-1).)

Construing all evidentiary inferences in Plaintiff's favor, these documents reveal that the Beneficiary Defendants knew that Plaintiff lived in Alabama and that she was a majority beneficiary on Mr. Ellis's policy.  The Beneficiary Defendants' intentional and fraudulent act of causing a change in the beneficiary designation individually targeted Plaintiff by cutting off her right to any share of the policy's proceeds and by dividing those policy proceeds equally among themselves.  In effectuating the change in the beneficiary designation form, the Beneficiary Defendants targeted Plaintiff in the same manner that the California beneficiary was a target in *Metropolitan Life*: The Beneficiary Defendants' intentional conduct

defrauded the forum Plaintiff by depriving her of her right to the policy's proceeds. In sum, the court finds that the facts are sufficient to support a theory that the Beneficiary Defendants expressly aimed their fraudulent conduct at Plaintiff, whom they knew to be an Alabama citizen and whom they knew would suffer harm in Alabama. The express aiming prong of the *Calder* effects test is satisifed.[12]

### c.    *Reasonable Anticipation of Injury in the Forum*

The Beneficiary Defendants contend in boilerplate fashion that they never have anticipated being haled into court in the state of Alabama.  (*See, e.g.*, Hanson's Aff. ¶ 14.)  Certainly, the Beneficiary Defendants should not be surprised to be hailed into court in Alabama when they took affirmative steps through alleged fraudulent means to deprive Plaintiff of her share of the policy's proceeds.   They should have reasonably anticipated that Plaintiff would be injured when she was removed as a 66 percent beneficiary on a $1 million policy, and they should have reasonably anticipated that her harm would occur in Alabama where she was known to live.  *See*

---

[12] *Metropolitan Life* also made an observation that is equally applicable here.  The Ninth Circuit commented that, had the insurance company known of the alleged fraudulent conduct of the Alabama beneficiary before it had paid out the policy proceeds, the insurance company could have filed a statutory interpleader action in California, and jurisdiction would have been proper. *See Metro. Life*, 912 F.2d at 1065−66 (citing 28 U.S.C. § 1335).  The Ninth Circuit explained that "[t]his makes it even more difficult for the [Alabama beneficiary] to contend that the California's court's exercise of jurisdiction over her is unreasonable in this case."  *Id.* at 1066. The same arguably could be said in this case:  National Life, as the stakeholder, would have satisfied § 1335's requirements had it initiated an interpleader action in Alabama, as the res exceeds $1 million, and there are two adverse claimants of diverse citizenship.

*Licciardello*, 544 F.3d at 1288 ("[T]he commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum" means that the tortfeasor "cannot now claim surprise at being haled into court [t]here."). Accordingly, Plaintiff has satisfied the third element of the *Calder* effects test. Because all three elements of the *Calder* test are satisfied, the Beneficiary Defendants have constitutionally sufficient minimum contacts with the state of Alabama.

**B.   Fair Play and Substantial Justice**

Even where a defendant has purposefully established constitutionally sufficient minimum contacts within the forum state, jurisdiction still must comport with fair play and substantial justice. "Relevant factors include the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Licciardello*, 544 F.3d at 1288.

Here, Plaintiff, as an Alabama citizen who was injured by nonresidents' alleged intentional conduct directly aimed at her, "is not required to travel to the nonresident's state of residence to obtain a remedy." *Id.* "'An individual injured in [Alabama] need not go to [Mississippi] to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.'" *Id.* (quoting *Calder*,

22

465 U.S. at 1487).   Additionally, it has been recognized that a state has a strong interest in providing a forum for its citizens who have been injured by the intentional acts of out-of-state residents.   *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). Based upon these considerations, the court finds that its exercise of personal jurisdiction over the Beneficiary Defendants comports with traditional notions of fair play and substantial justice and that the due process requirements of the Constitution are met in this case.[13]   *Calder*, 465 U.S. at 791.

## B.   Motion to Transfer Pursuant to § 1404(a)

As an alternative to dismissal for lack of personal jurisdiction, the Beneficiary Defendants ask the court to transfer this action to the United States District Court for the Southern District of Mississippi, pursuant to § 1404(a).   Plaintiff opposes the transfer.

Section 1404(a) mandates a two-step analysis.   First, the court must determine whether venue would be proper in the proposed transferee district.   § 1404(a); *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).   Second, the court must analyze whether "[f]or the convenience of the parties and witnesses" and in the "interest of justice," the action should be transferred.   § 1404(a).

---

[13] Because the court finds that personal jurisdiction over the Beneficiary Defendants is proper in this court, the court need not address the Beneficiary Defendants' argument that they are indispensable parties and that, therefore, if personal jurisdiction is lacking over them, then the entire action must be dismissed.

Under the first step, the Beneficiary Defendants argue that a substantial part of the events giving rise to Plaintiff's claims arose in the Southern District of Mississippi and that, therefore, pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in that district.  Plaintiff does not refute this argument.

Venue is statutorily proper in any district "in which a substantial part of the events or omissions giving rise to the claim occurred." § 1391(b)(2).  In the Eleventh Circuit, "[o]nly the events that directly give rise to a claim are relevant" to the analysis. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003).

Plaintiff's pleadings and the evidence submitted, as highlighted in Part IV. A. *supra*, reveal that more than a substantial portion of the events resulting in Plaintiff's harm occurred in Mississippi.  The evidence establishes further that these events occurred in Gulfport, Mississippi, which is in the Southern District of Mississippi. The alleged fraudulent change in Mr. Ellis's policy beneficiary designation happened in Gulfport, Mississippi, where Mr. Ellis lived.  Additionally, the undisputed evidence demonstrates that all of the physician evaluations and court proceedings surrounding Mr. Ellis's competency occurred in the Southern District of Mississippi. In fact, the Amended Complaint lacks any reference to any events occurring in the Middle District of Alabama.  Not even Plaintiff's alleged harm was felt in this district, as Plaintiff lives in the Southern District of Alabama, not the Middle District

of Alabama.  Accordingly, the court finds that venue is proper in the Southern District of Mississippi, pursuant to § 1391(b).[14]

Under the second step, several factors guide a district court's determination of whether to transfer an action under § 1404(a):

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).

Other than herself and National Life, Plaintiff has not identified any parties or potential witnesses who do not live in the Southern District of Mississippi.  Three of Mr. Ellis's four adult children reside in Gulfport, Mississippi, in the Southern District

---

[14] This is an appropriate point to note that it is dubious that venue is appropriate in the Middle District of Alabama. *See generally* 28 U.S.C. § 1391(b).  No Defendant is an Alabama resident.  No evidence or argument has been made that any event, much less a substantial part of the events, occurred in this district. *See* § 1391(b)(1)–(2).  Moreover, because a substantial part of the events occurred in the Southern District of Mississippi, Plaintiff cannot rely on § 1391(b)(3) to establish venue. *See* § 1391(b)(3) (allowing a plaintiff to bring an action in a district in which any defendant is subject to personal jurisdiction with respect to the action, only if there is "no district in which an action may otherwise be brought" under § 1391(b)(1) or (2)).  The Beneficiary Defendants' motion to transfer is based on a transfer to an alternative venue for convenience, pursuant to § 1404(a). *See Ford v. Brown*, 319 F.3d 1302, 1307 (11th Cir. 2003) (noting that a motion made under § 1404(a) assumes that venue is proper).  Because the Beneficiary Defendants have not relied on 28 U.S.C. § 1406(a) to argue that venue in this district is wrong (as opposed to proper but inconvenient), the court analyzes the transfer issue only under § 1404(a), just as the Beneficiary Defendants do.  It is notable, however, that under § 1406(a), the court would have reached the same result.

of Mississippi.  The address of the Defendant trust is in Gulfport, Mississippi, and the trustee also resides in Gulfport.  And Mr. Ellis's fourth adult child, Russell W. Ellis, who is the beneficiary of the trust, lives in Petal, Mississippi, which also is in the Southern District of Alabama.  Additionally, Mr. Ellis's physicians, whom Plaintiff references in her Amended Complaint, practice medicine in the Southern District of Mississippi.  Moreover, to the extent that the events surrounding the conservatorship are relevant for trial, all of those proceedings, including medical examinations and court appearances, occurred in the Southern District of Mississippi, and the documents related to those proceedings also are located in this district.  Furthermore, as demonstrated by Defendants, many of the potential, non-party witnesses could not be compelled to testify in the Middle District of Alabama because they live outside this court's subpoena power.  *See* Fed. R. Civ. P. 45(b)(2) & (c)(3).  Moreover, the operative facts underlying Plaintiff's claims that Mr. Ellis lacked the mental capacity to change the beneficiary on the policy and that Plaintiff's removal as a beneficiary was fraudulent occurred in the Southern District of Mississippi, where Mr. Ellis lived. In particular, the beneficiary designation change occurred in Gulfport, as did the alleged fraud.

Although the choice of forum of the plaintiff is an important consideration under § 1404(a), courts have given that factor less significance where, as here, the

operative facts underlying the causes of action did not occur within the forum chosen by the plaintiff and the forum does not encompass the district where the plaintiff resides. *See Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1358 (N.D. Ala. 1998) (citing *Garay v. BRK Electronics*, 755 F. Supp. 1010, 1011 (M.D. Fla. 1991)). Plaintiff contends that if this case is transferred to Mississippi, the laws of Alabama would govern this action and that, therefore, this court's familiarity with its own state's laws is a reason to deny a transfer, but she provides no analysis or authority for her position. (Doc. # 66, at 9.) Assuming without deciding that Plaintiff is correct, there is no indication from the record that the legal issues are either complex or novel, and no reason has been given that the Southern District of Mississippi would not be the appropriate forum to solve the legal issues. No other factors have been argued by the parties.

Having weighed the factors, the court finds that the situs of operative facts, the ease of access to sources of proof, the convenience and location of witnesses, and the unavailability of process to compel the attendance of non-party witnesses for trial weigh in favor of a transfer to the Southern District of Mississippi. Plaintiff's choice of forum and the governing law have only slight weight in this case. Given the totality of the circumstances, the interest of justice weighs in favor of a transfer. In

sum, the balance of the relevant factors demonstrates that the appropriate venue for this suit is in the Southern District of Mississippi.

## VI.  CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

(1)     The Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction (Doc. # 60), filed by Janet E. Gordon, Elizabeth E. Hanson, John C. Ellis III, and The Russell W. Ellis Irrevocable Trust, is DENIED;

(2)     the alternative motion to transfer (Doc. # 60) is GRANTED, and this action is TRANSFERRED to the United States District Court for the Southern District of Mississippi, pursuant to 28 U.S.C. § 1404(a); and

(3)     the Clerk of the Court is DIRECTED to take appropriate steps to ensure that the funds deposited with this court are deposited with the transferee court for ultimate disposition.

DONE this 30th day of August, 2012.

_____ /s/ W. Keith Watkins _____
CHIEF UNITED STATES DISTRICT JUDGE